Case 4:24-cv-00596   Document 45   Filed 01/15/26 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
January 15, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CORINTHIA WILLIAMS, § <br> § <br> *Plaintiff,* § <br> VS. § <br> § <br> DEPUTY BRIAN MEYER, in his individual § <br> capacity, § <br> § <br> *Defendant.* § <br> § | CIVIL ACTION NO. 4:24-cv-596 |

### ORDER

Pending before the Court is Defendant Brian Meyer's Motion for Summary Judgment Based on Qualified Immunity. (Doc. Nos. 28, 29). Plaintiff Corinthia Williams responded (Doc. No. 34) to which Defendant replied (Doc. No. 36). After considering the pleadings, the evidence, and the applicable law, this Court **GRANTS** the motion.

### I. BACKGROUND

This is a § 1983 civil rights case. On March 31, 2023, after one of Plaintiff Corinthia Williams's ("Plaintiff" or "Williams") daughters was taken to the hospital with apparent injuries, Defendant Fort Bend County Sherriff's Deputy Brian Meyer ("Defendant" or "Deputy Meyer") was dispatched to her residence to investigate the domestic violence incident. The incident at issue, which had allegedly occurred earlier in the day, involved Plaintiff's daughter, Kailyn Williams ("Kailyn"), and Kailyn's sister. (Doc. No. 28 at 2). Kailyn had allegedly hit her sister on the head with a brick. (Doc. No. 29 at 5). Around 6:00pm, Deputy Meyer arrived at Williams's residence with the intent of interviewing Kailyn, approached the front door, and rang the doorbell. The ensuing events were captured on Deputy Meyer's body-worn camera, the footage of which has been attached to Defendant's motion as Exhibit 1.

Shortly after he rang the doorbell, Plaintiff answered the door. Deputy Meyer asked if Kailyn Williams was present and if he could speak to her about the alleged incident with her sister. After first insisting that Kailyn was a minor, despite her being 18 years old, Plaintiff called Kailyn to the door.

Once Kailyn arrived at the door, Deputy Meyer asked her to step outside and talk to him about the incident. Williams immediately intervened and informed Deputy Meyer that "she can stay right here. She can talk to you right here," referring to Kailyn being inside the house behind Williams. Deputy Meyer and Williams then went back and forth several times on the topic, with Deputy Meyer asking Kailyn to step outside and Williams refusing to let him speak with Kailyn outside or by herself. Williams repeatedly told the deputy that "you are not going to speak to my child by herself." Williams then told Deputy Meyer to "call his supervisor" because Kailyn was "not going to speak to [him] by herself."

Throughout this roughly two-minute interaction, Williams was positioned in the doorway of her partially open front door with her hand on the door so that her body and arm were blocking Kailyn who was positioned behind her. After repeatedly asking to speak to Kailyn alone, Deputy Meyer then asked Williams herself to step out onto the front porch so he could speak with her. She agreed, instructed Kailyn to stay inside, and started to close the front door and step outside.

As she started to step outside, Deputy Meyer reached for Williams's arm, and a physical altercation between the two parties ensued. Williams yelled "don't touch me," at Deputy Meyer, and he responded that she was interfering with his investigation. Williams continued to insist that she was not interfering with his investigation and warned Deputy Meyer not to touch her.

After the two parties argued for a few seconds, Deputy Meyer warned Williams twice that he would "take [her] to jail for interfering with [his] investigation." Deputy Meyer then said, "I'm

not going to play games with you," and grabbed Williams's wrist. At this time the parties still appeared to be talking in the doorway of Williams's home. As things continued to escalate, Williams instructed Kailyn to "go upstairs."

Next, Deputy Meyer entered Williams's home and attempted to detain her for interfering with his investigation. Williams continually resisted and insisted Deputy Meyer call his supervisor. The two then had a physical and verbal struggle lasting around eight minutes. After more officers arrived on the scene, Williams was ultimately placed in handcuffs, arrested, and transported to the Fort Bend County Jail. (Doc. No. 29 at 9). Williams was charged with assault on a peace officer; criminal mischief; resisting arrest, search or transport; and interference with public duties. (*Id.*). Deputy Meyer presented a probable cause affidavit to a Fort Bend County magistrate, (*Id.* at 8–9), who then issued an arrest warrant for Williams for those charges. (*Id.* at 25). Ultimately, Fort Bend County declined to prosecute any of the charges against Williams. (Doc. No. 34-4 at 2–5).

Subsequently, Williams brought the present lawsuit against Deputy Meyer in his individual capacity alleging that during this incident he violated Williams's civil rights in violation of 42 U.S.C. § 1983. Deputy Meyer filed his present Motion for Summary Judgment Based on Qualified Immunity, asking this Court to grant him the defense of qualified immunity and dismiss all of Plaintiff's claims with prejudice. (Doc. No. 28). That motion is ripe for resolution.

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

If there is video recorded evidence that discredits the non-moving party's version of events, the court should not consider the evidence in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Instead, the court should view the evidence in the light depicted in the video recording. *Id.* "There is only so much [courts] can place within the range of decisions by reasonable jurors." *Garcia v. Orta*, 47 F.4th 343, 353 (5th Cir. 2022).

**B. Qualified Immunity Standard**

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

4

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The concept of qualified immunity has broad application to officers acting in their official capacity. The Supreme Court has summarized its reach by saying it protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To determine whether an official is entitled to qualified immunity, courts engage in a two-step analysis. They must decide (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's misconduct. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted). A defendant's assertion of qualified immunity "alters the usual . . . burden of proof." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting *Brown*, 623 F.3d at 253). In the summary judgment context, the plaintiff thus bears the burden of proof to show a genuine and material factual dispute as to whether the official is entitled to qualified immunity. *Id.*

### III. ANALYSIS

Defendant has moved for summary judgment based on qualified immunity on all four of Plaintiff's § 1983 claims. The Court will address each claim in turn.

#### A. Plaintiff's Unlawful Seizure Claim

Plaintiff's first claim is that Deputy Meyer violated her Fourth Amendment right to be free from unlawful seizure when he arrested her. (Doc. No. 34 at 6). Defendant argues that he is entitled to qualified immunity on this claim because he did not violate Plaintiff's constitutional rights due to the arrest being valid under the Fourth Amendment. (Doc. No. 28 at 8).

The Fourth Amendment requires an arrest to be supported by a properly issued arrest warrant or by probable cause. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). Deputy

5

Meyer is entitled to a qualified immunity defense for the arrest if "a reasonable person in [his] position could have believed he had probable cause to arrest" the Plaintiff. *Id.* Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 165 (5th Cir. 1997). Importantly, it is Williams's burden to negate probable cause, and it is not Deputy Meyer's burden to establish probable cause. *Sorenson v. Ferrie*, 134 F.3d 325, 330 (5th Cir. 1998). The Fifth Circuit has noted that "[a] plaintiff must clear a significant hurdle to defeat qualified immunity. There must not even arguably be probable cause for the ... arrest for immunity to be lost." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). "Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest [even if] the innocence of the suspect is later proved." *Pierson v. Ray*, 386 U.S. 547, 555 (1967).

Deputy Meyer argues that the independent intermediary doctrine applies in this case and "breaks the causal chain and negates any unlawful seizure or arrest." (Doc. No. 28 at 13). Plaintiff does not respond to or address this argument in her response. *See* (Doc. No. 34).

Under the independent intermediary doctrine, "if an independent intermediary, such as a justice of the peace [or magistrate], authorizes an arrest, then the initiating party cannot be liable for false arrest." *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019); *Hall v. Trochessett*, 105 F.4th 335, 342 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1173 (2025). This is because "the intermediary's decision breaks the chain of causation for false arrest." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). The independent intermediary doctrine persists even when the officer acted maliciously, *Shaw*, 918 F.3d at 417, and when the arrestee was never convicted of a crime, *Buehler v. City of Austin*, 824 F.3d 548, 554 & n.5 (5th Cir. 2016). The independent intermediary rule has

one single, narrow exception: the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant. *Trochessett*, 105 F.4th at 342; *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010).

Here, the Fort Bend County magistrate qualifies as an independent intermediary. Deputy Meyer provided a probable cause affidavit to the magistrate, (Doc. No. 29 at 8–9), who then issued an arrest warrant for Plaintiff, (Doc. No. 29 at 25). Defendant has attached authentic copies of the arrest warrant and the probable cause affidavit to his motion. (Doc. No. 29 at 8-9 (Probable Cause Affidavit), 25 (Arrest Warrant)). The arrest warrant contained four charges: assault of a peace officer; criminal mischief; resisting arrest, search or transport; and interference with public duties. (*Id.* at 25). The facts in the probable cause affidavit align with the facts depicted in the video evidence, which both parties cite to and rely on. (Doc. No. 29 at 8–9; Doc. No. 28 at 2–4; Def.'s Ex. 1). The Fort Bend County magistrate found probable cause to issue a warrant for Plaintiff's arrest for each of the four charges. (Doc. No. 29 at 25). Therefore, the "chain of causation for false arrest" has been broken, and Deputy Meyer cannot be found liable for false arrest. *McLin*, 866 F.3d at 689.

Moreover, Plaintiff has not brought forth facts that demonstrate that it was "obvious that no reasonably competent officer would have concluded that a warrant should issue," which is the single, narrow exception to the independent intermediary doctrine. *Trochessett*, 105 F.4th at 342. Plaintiff fails to show or allege that Deputy Meyer withheld information from the Fort Bend County magistrate who found probable cause to arrest her, which is the required showing to overcome this doctrine. *See Curtis v. Sowell*, 761 F. App'x 302, 305 (5th Cir. 2019).

As Williams has failed to raise a fact issue as to any Fourth Amendment violation regarding her false arrest claim, this Court **GRANTS** summary judgment in favor of Defendant because he is shielded by qualified immunity. Williams's § 1983 claim for false arrest is **DISMISSED** with prejudice.

### B. Plaintiff's Unlawful Entry Claim

Next, Defendant argues that he has satisfied both prongs of the qualified immunity defense on Plaintiff's unlawful entry claim. His defense can be resolved on just the first prong, so the Court will analyze whether Williams has established that Defendant violated her constitutional rights. The Court finds that she has not.

Williams alleges that Defendant violated her rights by unlawfully entering her home without a warrant. A warrantless entry into a home is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). However, exigent circumstances may exist to justify the intrusion. *See Minnesota v. Olson*, 495 U.S. 91, 100 (1990); *United States v. Rico*, 51 F.3d 495, 500–01 (5th Cir. 1995). Under the exigent circumstances warrant exception, the Supreme Court has recognized that police officers are not required to obtain a warrant where "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011).

Pursuit of a suspect is one of the exigencies that excuses a warrantless entry into a home. As a general rule, police may enter a fleeing felon's residence in order to effectuate an arrest if they are in hot pursuit of said felon. *United States v. Santana*, 427 U.S. 38, 42–43 (1976) (holding that a felony suspect in a public place cannot "thwart an otherwise proper arrest" by "retreating into her house"). In Texas, the warrantless entry into a residence to arrest or detain a suspect for a non-jailable offense is not permissible. *Randolph v. State*, 152 S.W.3d 764, 771 (Tex. App.—

Dallas, 2004, no pet.) However, if an offense—whether a misdemeanor or a felony—is punishable by confinement and there are exigent circumstances, then it is serious enough to justify the warrantless entry. *Id.* at 771–72.

In addition to exigent circumstances, police must also have probable cause in order to make a lawful warrantless entry into a residence. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (collecting cases).

Deputy Meyer argues that he had probable cause that Plaintiff "ha[d] committed, [was] committing, or [was] about to commit" four different offenses: (1) interfering with public duties under Texas Penal Code § 38.15; (2) resisting arrest under Texas Penal Code § 38.03; (3) evading arrest or detention under Texas Penal Code § 38.04; and (4) assault on a peace officer under Texas Penal Code § 22.01. *Id.*; (Doc. No. 28 at 11).[1] The parties do focus their arguments, however, on whether Deputy Meyer had probable cause to arrest Plaintiff for one charge: interference with public duties under § 38.15.

Under Texas law a person commits an offense of interference with public duties "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Tex. Penal Code § 38.15(a)(1). "[D]isobeying the instruction of a police officer who is performing official duties may be sufficient to establish probable cause for an arrest under section 38.15, at least where the instruction pertains to the arrestee's conduct." *Eisenbach v.*

---

[1] Neither party addresses nor attempts to argue that Deputy Meyer had a right to enter the premises because he had probable cause to arrest or at least interview Kailyn, who also appears to have lived at Williams's residence.

9

*Zatzkin*, 728 F. App'x 307, 311 (5th Cir. 2018). An offense under § 38.15 is a Class B misdemeanor, which is a jailable offense in Texas. Tex. Penal Code §§ 12.22, 38.15(b). As it follows, if Deputy Meyer had probable cause to arrest Williams for interference with public duties and her retreat into her home created an exigent circumstance, then his warrantless entry into her home was justified and did not violate her Fourth Amendment rights. *See Randolph*, 152 S.W.3d at 771–72.

To show that sufficient probable cause existed for Deputy Meyer to arrest Williams for interference with public duties, he relies on three cases. First, he cites *Huang v. Harris County*, 264 F.3d 1141 (5th Cir. 2001) (per curium). In *Huang*, an officer was investigating the plaintiff's son's involvement in an incident when the situation escalated and the plaintiff was arrested. *Id.* at *1. Ultimately finding the officer was protected by qualified immunity from plaintiff's suit, the Fifth Circuit found there to be probable cause to arrest the plaintiff for interference with public duties because the plaintiff physically blocked an officer from accessing her son during his investigation when she closed a gate that stood between the officer and her son. *Id.* at *7. Also relevant was the fact that the plaintiff told her son to go back into the house after the officer told him to stay where he was and the fact that the plaintiff refused to bring her son back outside even after being warned that she was interfering with a police investigation. *Id.* Each of these facts supported a probable-cause determination supporting the plaintiff's arrest. *Id.*

Next, Deputy Meyer relies on *Pearlman v. City of Fort Worth*, 400 F. App'x 956 (5th Cir. 2010). There, the Fifth Circuit affirmed that an officer "indisputably had probable cause to arrest [the plaintiff] for interfering with a police investigation" when the plaintiff physically intervened in an attempt to keep the officer away from her niece. *Id.* at 959.

Finally, Defendant cites *Childers v. Iglesias*, 848 F.3d 412 (5th Cir. 2017), where the Fifth Circuit held that the plaintiff's failure to comply with an officer's instruction, made within the

scope of the officer's official duty and pertaining to the plaintiff's physical conduct rather than speech, resulted in a violation of the interference with public duties statute. *Id.* at 415.

Instead of addressing these arguments from Defendant, Plaintiff counters by arguing that her conduct falls under the "speech only" exception under the interference with public duties statute, so Deputy Meyer could not have had probable cause to arrest her under that statute. (Doc. No. 34 at 7–8). Plaintiff's argument ultimately fails.

Under the interference with public duties statute, "[i]t is a defense to prosecution . . . that the interruption, disruption, impediment, or interference alleged consisted of speech only." Tex. Penal Code § 38.15(d). That being the case, the "speech-only defense is a defense to prosecution under Texas criminal law (see Tex. Pen. Code § 2.03), which is of no consequence to the argument that probable cause is lacking. A defense that may be raised in future proceedings does not vitiate probable cause at the time of arrest." *Trochessett*, 105 F.4th at 342. Moreover, Plaintiff's conduct cannot be considered as only speech.

The Court finds Deputy Meyer's arguments and his presented line of case law persuasive. In this case, according to the uncontroverted body-worn camera footage (Def.'s Ex. 1), Deputy Meyer made it apparent once he arrived at Plaintiff's home that he was investigating the incident that occurred between Kailyn and her sister. After she called Kailyn to the door, Williams prevented Deputy Meyer from proceeding with his interview with Kailyn both by verbally refusing his repeated requests to have Kailyn step onto the porch, but also by putting her body and the front door in between Kailyn and Deputy Meyer. This physical intervention between Deputy Meyer and Kailyn, the subject of his investigation, is more similar to the facts present in *Huang* and *Pearlman*. *See Huang*, 264 F.3d at *7 (plaintiff closed a gate behind her son as he entered the home, preventing

11

the officer's access to him); *Pearlman*, 400 F. App'x at 959 (plaintiff physically intervened in an attempt to keep the officer away from her niece).

Also like the plaintiff in *Huang*, Williams was warned multiple times that her actions and refusal to allow Kailyn to cooperate with the investigation were interfering with a police investigation. Once the situation had escalated and Williams and Deputy Meyer were arguing, Williams then told Kailyn to leave and go upstairs. The Fifth Circuit has held that "an arrestee's command to another to disobey a police officer's lawful order does not fall within the speech defense." *Trochessett*, 105 F.4th at 343. While Deputy Meyer had not necessarily ordered Kailyn to stay put, he clearly was attempting to interview her as a part of his investigation, and Williams's command for Kailyn to leave, and thus not speak to Deputy Meyer, necessarily interfered with his investigation.

This case can also easily be contrasted with the "speech-only defense" cases Williams relies on. In *Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007), there was no evidence the plaintiff did anything other than step outside and inform the officers that she would not permit entry into her home, which prompted her arrest. *Id.* at 414. At the time of her arrest, the officers knew that the plaintiff would not consent to a search of her home without a warrant, that they did not have a warrant to search her home, and that her son (who the police were looking for) did not live in her home, but in the home next door. *Id.* The court found that despite the plaintiff's "yelling" and "screaming," any reasonable officer would know that they could not search her home, so her refusal to allow that to occur did not interfere with any investigation. *Id.* Thus, there was no probable cause to arrest the plaintiff because her conduct consisted of exclusively speech. *Id.*

Here, rather than the target of the officer's investigation being next door, Kailyn was directly behind Williams, and Williams placed her body and the door between Kailyn and Deputy

Meyer in addition to verbally refusing to allow him to speak to Kailyn alone about the investigation.

It was reasonable for Deputy Meyer to believe that Williams was impeding his investigation in violation of the interference with public duties statute. Therefore, he had probable cause to arrest her for a jailable offense, and so his warrantless entry into Williams's home to arrest her did not violate her constitutional rights because he was pursuing her arrest. *See Randolph*, 152 S.W.3d at 771–72.

Williams cannot establish a genuine dispute of material fact as to prong one of Deputy Meyer's qualified immunity defense. Therefore, his Motion for Summary Judgment is **GRANTED** and Williams's § 1983 claim based on unlawful entry is **DISMISSED** with prejudice due to Deputy Meyer's qualified immunity defense.[2]

C. **Plaintiff's Excessive Force Claim**

Plaintiff's Second Amended Complaint alleges that Defendant "grabbed Plaintiff's person, slammed her against a wall, and detained Plaintiff without reasonable suspicion that a crime had been committed and without Plaintiff's permission," (Doc. No. 20 at 4), which Defendant addresses in his motion as an excessive force claim under § 1983. (Doc. No. 28 at 13). In Plaintiff's response to the motion, she states that "Plaintiff is not making a claim for excessive force []." (Doc. No. 34 at 1). Plaintiff has withdrawn any excessive force claim she may have initially pled in her response to Defendant's motion. Therefore, these claims are no longer before the Court. This Court **ORDERS** that Plaintiff's excessive force claim under § 1983 be **DISMISSED** with prejudice.

---

[2] The alleged injuries and the alleged constitutional violations in the present case appear to be significantly more benign than two recent cases in which the Fifth Circuit found qualified immunity as a matter of law. *See Lewis v. Delgado*, No. 24-20484, 2026 WL 44682 (5th Cir. Jan. 7, 2026); *Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022).

### D. Plaintiff's Fourteenth Amendment Violation Claims

Plaintiff's Second Amended Complaint also alleges Defendant violated her Fourteenth Amendment Rights. (Doc. No. 20 at 5). Plaintiff's response to Defendant's Motion, however, "withdraws her claims under the 14th Amendment." (Doc. No. 34 at 1). Since Plaintiff has withdrawn her Fourteenth Amendment claims, these claims are no longer before the Court. This court **ORDERS** that Plaintiff's Fourteenth Amendment violation claims under § 1983 be **DISMISSED** with prejudice.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment Based on Qualified Immunity (Doc. No. 28) is **GRANTED**. Plaintiff's claims are **DISMISSED** with prejudice. Final and appealable judgment will be entered separately.

It is so ordered.

Signed on this the ___ day of January, 2026.

Andrew S. Hanen
United States District Judge